# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | | |
|---|---|---|
| JOHNATHAN D. MCCUNE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 13-0452-CV-W-NKL-P |
| | ) | |
| LARRY DENNEY, | ) | |
| | ) | |
| Respondent. | | |

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING THE ISSUANCE OF A CERTIFICATE OF APPEALABILITY**

Petitioner filed this federal petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 to challenge his 2008 conviction and sentence for statutory rape and child abuse, which was entered in the Circuit Court of Johnson County, Missouri. Petitioner raises four (4) grounds for relief: (1) petitioner received ineffective assistance of counsel because counsel failed to advise petitioner of the effect his guilty plea would have on a subsequent case; (2) petitioner received ineffective assistance of counsel because counsel failed to move to dismiss a charge of child abuse; (3) the plea court did not have a sufficient factual basis to accept petitioner's guilty plea for child abuse; and (4) petitioner received ineffective assistance of counsel because plea counsel "incorrectly advised him that his chance of acquittal at trial was slim." Doc. No. 1. Respondent contends that Grounds 1 and 2 are without merit, that Ground 3 is not cognizable, and that Ground 4 is procedurally barred.

## FACTUAL BACKGROUND

In affirming the judgment of conviction and sentence of the state circuit court denying petitioner's Rule 24.035 motion for post-conviction relief, the Missouri Court of Appeals,

Western District, set forth the following facts:

> [Petitioner] was indicted for first-degree statutory rape and the class C felony of abuse of a child (alleging that [petitioner] burned Stepdaughter's legs and back with a cigarette) for acts occurring between May 1, 2005, and August 31, 2005, in Johnson County, Missouri. [Petitioner] executed a written Petitioner to Enter Plea of Guilty wherein he state that he
>
>> had sexual intercourse with A.R. (D.O.B. 12/05/1995) between May 1st 2005 & August 31st, 2005, in Johnson County Missouri, who was then less than 12 years old. I also knowingly inflicted cruel and inhuman punishment upon A.R. (d.o.b. 12/5/1995), a child less than 17 years old, by burning her legs and back with a cigarette.
>
> . . . .
>
> The court questioned [petitioner] about the assistance of counsel, and [petitioner] indicated that plea counsel had done everything [petitioner] asked of him, that there was nothing counsel failed to do, and that [petitioner] was satisfied with counsel's services. [Petitioner] verified that counsel discussed the State's evidence with him, as well as his potential defenses to the charges. [Petitioner] indicated that, after going over all of that information with counsel, he chose to enter a guilty plea of his own free will. [Petitioner] denied that counsel made any threats or promises to induce his pleas, and [petitioner] again affirmed his satisfaction with counsel's services.
>
> Thereafter, [petitioner] filed a pro se Rule 24.035 motion. The court appointed counsel, and appointed counsel filed an amended motion, alleging (among other claims) that counsel was ineffective for "incorrectly advising Movant concerning the [e]ffect that plea to charges in Johnson County, Missouri, would have on pending and potential prosecutions in other jurisdictions, including the pending prosecution in Johnson County, Kansas, and the potential for Movant to enter into a plea bargain in those other jurisdiction." The amended motion also alleged that plea counsel was ineffective for advising [petitioner] to plead guilty to the child abuse charge because "there was no allegation that Movant committed the alleged acts in Johnson County, Missouri[.]" The amended motion further alleged that there was an insufficient factual basis for McCune's guilty plea to child abuse because "the alleged victim made no claim that [petitioner] committed the acts alleged in Johnson County, Missouri.
>
> The motion court held an evidentiary hearing, wherein it received testimony from plea counsel, [petitioner], and [petitioner]'s public defender from Kansas. Plea counsel testified that he advised [petitioner] "early on that petitioner had four cases pending[,]" and that "[t]he odds of him winning four

trails were slim[.]" He also advised [petitioner] that if he were convicted at trial, he would probably get a sentence of twenty years. Counsel testified that "per that advice, [petitioner] decided to pursue a plea." Plea counsel suggested that the best course of action would be to "try to work a plea to the lowest amount of years[, a]nd hopefully, then, the other jurisdictions would do something comparable to the plea that we get here in Johnson County." Counsel suggested to [petitioner] that in his other cases, "most likely he would get something comparable but there is a risk." Counsel testified, "[t]hat is why [petitioner] pled." Counsel's advice was based upon his past experience that "other jurisdictions had been willing to do something comparable rather than use resources for someone that is already serving a 13 year sentence." Counsel did not believe that any of [petitioner]'s other cases would go to trial. As far as the Kansas case, counsel "did not believe they were going to give him the max and make it consecutive." Counsel "told [petitioner] it was a possibility but that [he] didn't belie[ve] they would do that to him." When asked if he adviced [petitioner] that similar plea agreements were not only possible, but were, in fact, a likely outcome, counsel responded, "I emphasized that there was a chance."

[Petitioner] testified that he and plea counsel did not discuss how his Johnson County, Missouri, pleas would affect his potential sentences in the other cases. [Petitioner] indicated that he and counsel

> had discussions about them running it concurrent or whatnot, if they could. There was a possibility because it's the same girl and the stories all came out at the same time. There was a possibility that I would get close to the same amount of time as I was plea[d]ing to here as in other counties.

[Petitioner] stated that counsel told him "that [he] really didn't have a chance and [he] would do less time if [he] just pled to all the charges[.]" [Petitioner] testified that, had he not been advised by counsel of the possibility of a plea agreement in Kansas similar to the agreement he received in this case, he would not have pled guilty.

[Petitioner]'s Kansas public defender testified that because of Kansas's version of "Jessica's Law," [petitioner]'s offenses carried a minimum twenty-five-year sentence for a first-time offender. But with a prior offense, the mandatory minimum rose to forty years. She further testified that a prosecutor lacks the discretion to agree to a sentence below the statutory minimum, but the minimum could be avoided as part of a plea agreement if the charge were dropped and re-filed as a different charge outside the coverage of Kansas's version of "Jessica's Law."

The motion court issued findings of fact and conclusions of law, overruling [petitioner]'s motion. The motion court found that, even if counsel provided

3

[petitioner] with misadvice regarding the possible outcome of his Kansas case, [petitioner] did not rely on that misadvice in deciding to plead guilty; rather, [petitioner] pled guilty to avoid a life sentence (the maximum possible) for the Johnson County, Missouri, charges. The motion court also determined that counsel was not ineffective for advising [petitioner] to plead guilty to child abuse because there was a sufficient factual basis for the plea. [Petitioner] appeals.

Respondent's Exhibit F, pp. 4-9.

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. Marshall v. Lonberger, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. Graham v. Solem, 728 F.2d 1533, 1540 (8th Cir. en banc), cert. denied, 469 U.S. 842 (1984). It is petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254 (e)(1).[1] Because the state court's findings of fact have fair support in the record and because petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

## GROUND 1

In Ground 1, the petitioner claims that he received ineffective assistance of counsel because counsel failed to advise petitioner of the effect his guilty plea would have on a subsequent Kansas case. Petitioner claims that, although counsel told petitioner that the present case could be used against him in his Kansas cases, counsel did not inform petitioner of any mandatory sentence requirements in Kansas that would be affected by a conviction in Johnson

---

[1]In a proceeding instituted by an application for writ of habeas corpus by a person in custody pursuant to a judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

4

County, Missouri.  Doc. No. 1, p. 4.

Following petitioner's guilty plea in Johnson County, Missouri, petitioner was convicted in Johnson County, Kansas, of two counts of rape of a child under fourteen.  Resp. Ex. A, pp. 36, 40.  In Kansas, petitioner's offenses require a minimum of twenty-five years' imprisonment for a first-time offender, but, with a prior "personal felony," the mandatory minimum rises to forty years.  Resp. Ex. F, p. 8.  Because petitioner had two prior "personal felonies" as a result of his guilty pleas in the present case, Kansas law required the Kansas Court to sentence petitioner to a mandatory minimum of forty years' imprisonment.  Resp. Ex. A, pp. 40-41.  Petitioner claims that, if he had known a felony conviction in Missouri would increase the mandatory minimum term he faced in Kansas, he would not have pled guilty.  Doc. No. 1, p. 6.

In order for petitioner to successfully assert a claim for ineffective assistance of trial counsel, petitioner must demonstrate that his attorney's performance "fell below an objective standard of reasonableness" and that "the deficient performance" actually prejudiced him. Strickland v. Washington, 466 U.S. 668, 687-88 (1984).  This Court, moreover, may not grant habeas relief unless the state appellate court's decision "was contrary to, or an unreasonable application of, the standard articulated by the [United States] Supreme Court in Strickland." Owens v. Dormire, 198 F.3d 679, 681 (8th Cir. 1999), cert. denied, 530 U.S. 1265 (2000).

 "A court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance."  Harrington v. Richter, 131 S. Ct. 770, 787 (2011) (quoting Strickland, 466 U.S. at 689).  Petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Strickland, 466 U.S. at 687.

5

At an evidentiary hearing on his state post-conviction motion, counsel testified that he was aware petitioner had other charges pending in Kansas and in another county in Missouri that were related to the present convictions. Resp. Ex. A, pp. 8-9. Counsel reviewed the Kansas sentencing guidelines and discussed them with petitioner, but did not inform petitioner of any mandatory sentence requirement in Kansas. Resp. Ex. A., pp. 11, 13. Counsel also discussed with petitioner how the guilty pleas in Johnson County, Missouri, might impact his ability to defend the charges he was facing in other jurisdictions. Resp. Ex. A., pp. 13-14.

The Missouri courts found that counsel's performance was not deficient and, thus, petitioner did not receive ineffective assistance of counsel. Resp. Ex. F, pp. 10-12. The Missouri Court of Appeals reasoned that counsel's failure to advice petitioner "can be found deficient only if the elevated mandatory minimum sentence in Kansas is considered a direct consequence of [petitioner's] pleas in Missouri." Resp. Ex. F, p. 10. The court found that the imposition of the mandatory minimum sentence requirement for petitioner's Kansas sentences was a collateral consequence of petitioner's guilty plea and that counsel had no duty to advise petitioner of the mandatory minimum sentences he faced in Kansas. Resp. Ex. F, pp. 10-12.

> "The validity of a plea of guilty depends on whether it was made voluntarily and intelligently, which means, *inter alia*, that the defendant must enter the plea with knowledge of direct consequences of the plea." Reynolds v. State, 994 S.W.2d 944, 946 (Mo. Banc 1999) (internal citation omitted). In contract, a defendant need not be advised regarding the collateral consequences of a plea in order to be voluntary. Id.
>
>> Direct consequences are set forth in Mo. R. Crim. P. 24.02(b) and include the nature of the charges, the maximum possible and mandatory minimum penalties, the right to be represented by an attorney, the right not to plead guilty, and the defendant's waiver of all trial rights if he pleads guilty.
>
> State v. Rasheed, 340 S.W.3d 280, 284 (Mo. App. E.D. 2011). Direct consequences are also "ones that 'definitely, immediately, and largely

6

> automatically' follow the entry of a plea of guilty." Id. (quoting Johnson v. State, 318 S.W.3d 313, 317 (Mo. App. E.D. 2010)). Collateral consequences, however, "are those that do not follow automatically from the guilty plea." Id.
>
> In Rasheed, the defendant argued that his federal defense counsel was "ineffective for failing to inform him that his plea could be used against him in state court." Id. at 283. Relying on the Eighth Circuit's holding in United States v. Williams, 104 F.3d 213, 316-17 (8th Cir. 1997), which determined that the direct consequences about which a defendant must be informed are only those he may face within the particular judicial system of his plea, the Eastern District of this court held that "the subsequent use of a guilty plea is a collateral consequence." Rasheed, 340 S.W.3d at 284. The court ultimately held that "[b]ecause the possibility that one's guilty plea may be used in a subsequent prosecution in a different jurisdiction is a collateral consequence, Rasheed's federal counsel did not have a duty to inform him that his plea could be used in state court." Id. at 285.
>
> Here, the fact that [petitioner]'s guilty pleas in Missouri could be used later in Kansas to enhance the penalties he faced – if convicted – for his charged crimes there was a collateral consequence. Thus, counsel had no duty to provide him this information.

Resp. Ex. F, pp. 10-11. The Missouri courts also found that, even if counsel provided petitioner with misadvise about the possible outcome of the Kansas case, petitioner did not rely on that misadvise in deciding to plead guilty; rather, petitioner pled guilty to avoid a life sentence, the maximum possible sentence for the Johnson County, Missouri, charges. Resp. Ex. F, pp. 8, 11, 12-13. The Rule 24.035 motion court weighed the credibility of both guilty plea counsel and petitioner and found that it was "hard pressed to find that [petitioner] relief on any such misrepresentations in entering his plea." Respondent's Ex. A, p. 12.

In petitioner's post-conviction proceedings, he sought to apply the United States Supreme Court's decision in Padilla v. Kentucky, 130 S.Ct. 1473, 1483 (2010), in urging the court to find that an attorney must inform a defendant of the potential that a guilty plea in one state may affect a subsequent mandatory minimum sentence in another state. In Padilla, the court held that counsel was deficient for failing to advise his client that his plea of guilty made him subject to

7

automatic deportation, but the Court did not apply the direct-collateral distinction to the claim that plea counsel was ineffective. Id. at 1482. Petitioner's increased mandatory minimum in a separate proceeding is distinguishable from the consequence of automatic deportation. At the time petitioner entered his guilty pleas in Missouri, petitioner had yet to be tried and convicted of the Kansas offenses, much less sentenced for them. Petitioner's mandatory minimum sentence in Kansas was not the "automatic" result of his conviction in Missouri.

The decision of the Missouri Court of Appeals is reasonable and therefore is entitled to deference under § 2254(d). Counsel's performance was not deficient because he failed to advise petitioner of the mandatory minimum statutory scheme in Kansas. Although an attorney has the duty to inform a defendant of the direct consequences of his guilty pleas, the use of a plea in a subsequent proceeding is not a direct consequence. United State v. Williams, 104 F.3d 213, 216 (8th Cir. 1997). Because the state courts' determinations did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," see 28 U.S.C. §2254(d)(1) and (2); Mo. Rev. State § 558.021(1)(3), Ground 1 will be denied.

**GROUND 2**

In Ground 2, petitioner claims he was denied effective assistance of counsel because plea counsel failed to move to dismiss the child abuse charge. Doc. No. 1, p. 7. Petitioner claims that there was no allegation that petitioner committed the offense in Johnson County, Missouri, and that he was prejudiced because the child abuse conviction resulted in an increased mandatory minimum sentence for petitioner's later Kansas convictions. Doc. No. 1, p. 8.

The indictment that charged petitioner with abuse of a child stated that between May 1, 2005, and August 31, 2005, in Johnson County, Missouri, petitioner knowingly inflicted cruel and inhumane punishment on the victim, a child less than seventeen years old, by burning her legs and back with a cigarette. Resp. Ex. B, p. 1. Petitioner acknowledged that he committed this offense in his written plea and orally at his plea hearing. Resp. Ex. B, pp. 4, 29. Petitioner now claims that various discovery documents involving statements from both him and the victim indicate that the victim was burned by petitioner while they were in Benton County, Missouri, and in Johnson County, Kansas, but that there was no mention in those documents that petitioner burned the victim during the charged period while in Johnson County, Missouri. Doc. No. 1, pp. 8-9; Resp. Ex. F, p. 15. Petitioner claims that, because these documents do not firmly establish that petitioner burned the victim while in Johnson County, Missouri, counsel was ineffective for failing to move to dismiss the abuse of child charge. Doc. No. 1, pp. 7-8.

As previously stated, petitioner must demonstrate that his attorney's performance "fell below an objective standard of reasonableness" and that "the deficient performance" actually prejudiced him. Strickland v. Washington, 466 U.S. at 687-88. The Missouri Court of Appeals reasoned that counsel's performance was not ineffective as follows:

> Notably absent from the evidentiary hearing testimony was any evidence from [petitioner] that he did not, in fact, burn the victim as outlined in the indictment. It is reasonable to assume that [petitioner] discussed the charge with counsel and advised counsel in a manner consistent with his testimony at the plea hearing – that he was guilty of the charged crime. We will not hold counsel ineffective for advising his client to plead guilty to a crime he believed his client committed when counsel had no reason to believe that the State lacked evidence to prove his client's guilt.

Resp. Ex. F, p. 17.

The conclusion of the Missouri Court of Appeals that counsel's performance was not

9

deficient under Strickland, has support in the record. At the plea, petitioner admitted that between May 1 and August 31, 2005, in Johnson County, Missouri, he knowingly inflicted cruel and unusual punishment on the victim, who was less than seventeen years old, by burning her legs and back with a cigarette. Resp. Ex. B, p. 29. In his petition to enter the plea of guilty, petitioner wrote that there was a factual basis for the plea and agreed to the same factual basis. Resp. Ex. B, p. 4. Petitioner claims counsel was ineffective in light of the victim's testimony at petitioner's later Kansas trial; however, petitioner fails to show how the victim's later testimony at the Kansas trial regarding separate events renders counsel's earlier advice regarding the Missouri offenses deficient.

Because the Missouri court's decision did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," see 28 U.S.C. §2254(d)(1) and (2); Mo. Rev. Stat § 558.021(1)(3), Ground 2 will be denied.

## GROUND 3

In Ground 3, petitioner claims there was an insufficient factual basis for his guilty plea for abuse of a child. Doc. No. 1, p. 10. Petitioner claims there was insufficient evidence because various discovery documents and the victim's testimony at a later Kansas trial for separate offenses do not affirmatively prove that petitioner burned the victim with cigarettes while in Johnson County, Missouri. Doc. No. 1, pp. 10-11.

Missouri law provides that a court must determine that there is a factual basis for conviction prior to accepting a guilty plea. See Mo. Sup. Ct. R. 24.02(e). It is a well-established rule of federal criminal procedure that there must be a factual basis sufficient to support a guilty plea. See

10

Fed. R. Crim. P. 11(b)(3). However, this requirement derives only from the Federal Rules of Criminal Procedure, and not from the Constitution. See Cranford v. Lockhart, 975 F.2d 1347 (8th Cir. 1992) (a state court's failure to comply with state rule requiring factual basis for guilty plea does not deprive defendant of due process, and thus does not warrant habeas relief). Federal circuit courts addressing similar claims have refused to impose a due process duty to establish a factual basis for a guilty plea entered in a state court. See Berget v. Gibson, 188 F.3d 518, slip op. at *6 (10th Cir. Aug. 5, 1999) (listing cases from Second, Third, Sixth, Seventh, and Ninth Circuits), cert. denied, 529 U.S. 1042 (2000)). Only when a defendant claims his factual innocence while pleading guilty have state courts been constitutionally required to establish a factual basis for a plea as required in North Carolina v. Alford, 400 U.S. 24, 37-39 (1970). Thus, federal habeas corpus relief for a claim of insufficient factual basis to support a conviction is not cognizable so long as a guilty plea was entered knowingly and voluntarily. See Wabasha v. Solem, 694 F.2d 155, 157 (8th Cir. 1982).

Furthermore, the state adequately set out a factual basis for the charge against petitioner when petitioner acknowledged at the guilty plea hearing that he committed the charged act, within the charged time period, in the charged county. Petitioner's plea was not accompanied by any claim of innocence as allowed under Alford, 400 U.S. at 91. Resp. Ex. B, pp. 4, 29. In addition, petitioner has not alleged that his guilty plea was unknowing or involuntary. Because petitioner's claim of insufficient evidence to support a guilty plea does not raise a Constitutional issue, habeas relief on Ground 3 must be denied.

## GROUND 4

In Ground 4, petitioner claims he was denied effective assistance of counsel because his plea counsel "incorrectly advised him that his chance of acquittal at trial was slim" and failed to

11

advise him on potential affirmative defenses. Doc. No. 1, p. 12. Petitioner argues that, because he has genital warts, evidence that the victim does not have genital warts was exculpatory. Doc. No. 1, p. 13. Petitioner claims that, if counsel had investigated the victim's medical records and discovered that she did not have genital warts, petitioner would not have pled guilty. Doc. No. 1, pp. 13-14.

To preserve issues for federal habeas review, a state prisoner must fairly present his or her claims to state courts during direct appeal or in post-conviction proceedings. Sweet v. Delo, 125 F.3d 1144, 1149 (8th Cir. 1997). Failure to raise a claim on direct appeal or in a post-conviction appeal is an abandonment of a claim. Id. at 1150 (citing Reese v. Delo, 94 F.3d 1177, 1181 (8th Cir. 1996)). Petitioner did not raise this claim of ineffective assistance of counsel in his post-conviction proceedings. Therefore, petitioner procedurally defaulted this claim.

A petitioner may overcome the procedural bar if he can demonstrate a legally sufficient cause for the default and actual prejudice resulting from it or that failure to review the claim would result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750. In order to satisfy the "cause" requirement, petitioner must show that an "external" impediment prevented him from presenting his claim to the state court in a procedurally proper manner. Id. at 753.

Petitioner asserts that ineffective assistance of post-conviction counsel caused his state procedural default. Doc. No. 1, p. 14. In Martinez v. Ryan, the court held that "Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." 132 S.Ct. 1309, 1315 (2012). To meet this narrow exception for establishing cause, petitioner must demonstrate that the post-conviction counsel also was ineffective under the standards of Strickland. Id.

To show that post-conviction counsel was ineffective under Strickland, petitioner must

demonstrate that post-conviction counsel was objectively unreasonable for failing to raise the claims of ineffective assistance of trial counsel and that petitioner was prejudiced as a result of this deficient performance. 466 U.S. at 687. Generally, to show prejudice for ineffective assistance, a petitioner must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 694.

Petitioner claims that counsel failed to advise him of "affirmative defenses" attacking the victim's character and veracity, that there were no corroborating witnesses, and that the victim had not contracted the venereal warts that petitioner had. Doc. No. 1, p. 12. Assuming that post-conviction counsel was objectively unreasonable in failing to assert a claim of ineffective assistance of plea counsel for failure to raise these "affirmative defenses," petitioner still must show that he was prejudiced as a result of his deficient performance.

"To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." Martinez, 132 S. Ct. at 1318. The defenses petitioner claims counsel was ineffective for failing to inform him about, even if true, would not show that the prosecutor had no valid case and would not create a justification for petitioner's crimes. Moreover, to establish ineffective assistance of plea counsel for failure to advise petitioner of potential affirmative defenses, petitioner must show that the affirmative defenses likely would have succeeded at trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985). Petitioner does not meet this burden.

Any attack on the victim's character or on the fact that petitioner happened not to transmit his genital warts to the victim would not have overcome the weight of the evidence. Petitioner voluntarily spoke with the police and confessed that he had sexual intercourse with the twelve

year-old victim. Resp. Ex. B, p. 20. Also, petitioner proceeded to a jury trial in Kansas for two counts of statutory rape with the same victim he raped in Missouri, and the Kansas court found him guilty. Kansas v. McCune, 08CR-00323.

Post-conviction counsel has stated, in an affidavit, that he did not research, investigate, or advise petitioner about a claim that evidence of his venereal disease would have been so compelling as to establish innocence. Doc. No. 14. However, post-conviction counsel's failure to investigate and pursue such a claim is not ineffective and cannot constitute cause to overcome the procedural default of petitioner's claim that plea counsel failed to advise him on affirmative defenses. "An attorney need not pursue an investigation that would be fruitless, much less one that might be harmful to the defense." Harrington v. Richter, 131 S. Ct. 770, 789-90 (2011). Any investigation of post-conviction counsel into petitioner's claims that trial counsel failed to raise affirmative defenses would have been fruitless because those claims lack legal merit. Because petitioner does not satisfy the elements of Strickland in order to show cause to overcome the procedural default, Ground 4 will be denied as procedurally barred.

## A CERTIFICATE OF APPEALABILITY WILL BE DENIED

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." Tennard v. Dretke, 542 U.S. 274, 276 (2004). Because petitioner has not met this standard, a certificate of appealability will be denied. See 28 U.S.C. § 2254, Rule 11(a).

Accordingly, it is **ORDERED** that:

(1) the petition for writ of habeas corpus is denied;

(2) the issuance of a certificate of appealability is denied; and

(3) this case is dismissed with prejudice.

      /s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
UNITED STATES DISTRICT JUDGE

Jefferson City, Missouri,

Dated: <u>March 25, 2014</u> .